**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

```
TAMMY CALVERT,                        )
                                      )
                    Plaintiff,        )    CIVIL ACTION
                                      )
v.                                    )    No. 08-1050-MLB
                                      )
JENNIFER EDIGER, in her official      )
and individual capacities,            )
LAUREL D. MCCLELLAN, in his           )
official and individual               )
capacities, RICHARD BEFORT,           )
in his official and individual        )
capacities, and MIKE FREEMAN,         )
in his official and individual        )
capacities,                           )
                                      )
                    Defendants.       )
                                      )
```

**MEMORANDUM AND ORDER**

This matter comes before the court on three defendants' separate motions to dismiss, which have been fully briefed and are ripe for decision:

1. Defendant Richard Befort's ("Befort's") motion to dismiss (Doc. 11) and memorandum in support (Doc. 12), plaintiff Tammy Calvert's ("Calvert's") response (Doc. 23), and Befort's reply (Doc. 29);

2. Defendant Laurel D. McClellan's ("McClellan's") motion to dismiss (Doc. 15) and memorandum in support (Doc. 16), Calvert's response (Doc. 25), and McClellan's reply (Doc. 31); and

3. Defendant Mike Freeman's ("Freeman's") motion to dismiss (Doc. 17) and memorandum in support (Doc. 18), Calvert's response (Doc. 27), and Freeman's reply (Doc. 32).

Defendant Jennifer Ediger ("Ediger") answered Calvert's complaint (Doc. 19) and subsequently filed a motion for judgment on the pleadings (Docs. 33, 34), which is not yet ripe. Discovery in this

matter has been stayed, pending this court's resolution of the motions to dismiss. (Doc. 30.)

This case arises under 42 U.S.C. § 1983, which prohibits "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by "every person" acting "under color of any statute, ordinance, regulation, custom, or usage, of any State." Calvert brings three claims under § 1983: 1) unlawful arrest; 2) unlawful detention and confinement; and 3) conspiracy between Ediger and McClellan. All claims are brought against defendants in both their individual and official capacities. See Doc. 1.

**I. FACTS**

The following facts were alleged in Calvert's complaint. (Doc. 1.) Plaintiff is a resident of Harper County, Kansas. On April 24, 2007, an order of probation was entered against Calvert's son, Christopher E.F. Winter ("Winter"). A condition of the probation order stated: "You will be at home unless you are with a parent or grandparent." The next condition of the probation order stated: "Your parents and/or grandparents are to report any violations of probation immediately to the supervision officer." The probation order was signed by Calvert and Winter.

Approximately three days later, on or about April 27, 2007, without Calvert's knowledge or consent, Winter and his friend took Calvert's car and credit card and went joyriding. Approximately ten days later, on the morning of May 7, 2007, Bud Moore, the principal of Winter's school, overheard Winter telling other students he had taken Calvert's car and credit card and gone joyriding on April 27. At approximately 11 a.m. that morning, Moore telephoned Calvert at

work, and informed her of Winter's statements regarding April 27. Moore also telephoned Ediger, Winter's probation officer and a case manager for the South Central Kansas Community Corrections Agency, and reported the same information to Ediger.

During the noon hour on May 7, Calvert went home from work and "confronted" her son about what she had learned from Bud Moore. Also during the noon hour, Ediger appeared at Calvert's residence and asked Calvert why she had not reported her son's probation violation. Calvert informed Ediger that she had just learned of Winter's actions from Bud Moore that morning, and until then had been unaware that her son had taken her car. Calvert told Ediger that since Ediger had already been told of Winter's actions, there was nothing else for Calvert to report. Ediger accused Calvert of intentionally failing to report Winter's actions, and informed Calvert she would be "thrown in jail" for failing to report her son's probation violation.

That afternoon, Ediger reported Winter's probation violation to McClellan, the county attorney for Harper County, Kansas. Ediger represented to McClellan that Calvert had known of her son's violation soon after it occurred and had intentionally failed to report her son's probation violation. Ediger and McClellan then formed an agreement that Calvert should be punished for intentionally not reporting Winter's probation violation and that Ediger's punishment should be "getting thrown in jail."

The next day, on May 8, 2007, McClellan filed a criminal action against Calvert. McClellan recited Ediger's representations and prayed for a bench warrant for Calvert's arrest. McClellan did not accompany his request with a probable cause affidavit or any sworn

statement.[1]  That same day, Befort, a magistrate judge for the Harper County District Court, issued a bench warrant for Calvert's arrest. The warrant stated Calvert had committed the offense of "Contempt of Court for failure to notify law enforcement or supervising officer of violations of the Order of Probation for her son . . . ."

On May 9, 2007, Freeman, an officer for the Harper County Sheriff's Department, appeared at Calvert's residence, placed Calvert under arrest in the presence of her children and family, and transported Calvert by police vehicle to the Harper County Jail. Freeman did not handcuff Calvert and told Calvert that he did not do so because he had never seen anyone arrested for a violation of which Calvert was charged.  Freeman told Calvert that because it was his job, he had to arrest her.  Calvert remained in police custody at the jail for approximately one hour before posting bond.

Over three months later, on August 28, 2007, Harper County District Court Judge Larry T. Solomon dismissed the case against Calvert.  The court found that it was without jurisdiction because the action was initiated without following the statutory procedures set forth in K.S.A. § 20-1202 et seq.[2]  The court also found that the matter should not have been initiated by a new criminal case filing, and that the arrest warrant was issued without a probable casue affidavit or any sworn statement.

Calvert contends that as a result of being arrested and

---

[1] Calvert alleges that McClellan did not comply with K.S.A. § 20-1204a, which governs initiating a proceeding for contempt of court.

[2] The article of the Kansas Statutes referred to governs proceedings for contempt of court.

criminally charged, her employment was terminated, and that she has been unable to obtain equivalent employment because of damage to her reputation, despite the criminal charges having been dropped. Calvert also contends she "has and continues to suffer humiliation and emotional distress as a result of Defendants' actions."

## II. MOTION TO DISMISS STANDARDS

The standards this court must utilize upon a motion to dismiss are well known. This court will dismiss a cause of action for a failure to state a claim only when it appears beyond a doubt that a plaintiff can prove no set of facts that would entitle legal relief or when an issue of law is dispositive. See Ford v. West, 222 F.3d 767, 771 (10th Cir. 2000); Robinson v. Kansas, 117 F. Supp.2d 1124, 1129 (D. Kan. 2000). All well-pleaded facts are accepted as true, and those facts and the reasonable inferences derived therefrom are viewed in the light most favorable to the plaintiff.[3] See Ford, 222 F.3d at 771; Davis v. United Student Aid Funds, Inc., 45 F. Supp.2d 1104, 1106 (D. Kan. 1998). In the end, the issue is not whether a plaintiff will ultimately prevail, but whether she is entitled to offer evidence to support her claims. See Robinson, 117 F. Supp.2d at 1129.

Ordinarily, a motion to dismiss should be converted to a summary judgment motion if a party submits, and the court considers, materials outside the pleadings. Fed. R. Civ. P. 12(b)(6). However, "if a plaintiff does not incorporate by reference or attach a document to

---

[3] Conclusory allegations, however, have no bearing upon this court's consideration. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based").

its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."[4] GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384-85 (10th Cir. 1997).

## III.  ANALYSIS

Pursuant to 42 U.S.C. section 1983, any person who "under color of . . . [law] . . . subjects, or causes to be subjected, . . . any [person] . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." Section 1983 was enacted to provide protections to those persons wronged by the misuse of power. While the statute itself creates no substantive civil rights, it does provide an avenue through which civil rights can be redeemed. See Wilson v. Meeks, 52 F.3d 1547, 1552 (10th Cir. 1995). To state a claim for relief in a section 1983 action, a plaintiff must establish that she was (1) deprived of a right secured by the Constitution or laws of the United States and (2) that the alleged deprivation was committed under color

---

[4] The GFF Corp case goes on to state:

> If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied. Moreover, conversion to summary judgment when a district court considers outside materials is to afford the plaintiff an opportunity to respond in kind. When a complaint refers to a document and the document is central to the plaintiff's claim, the plaintiff is obviously on notice of the document's contents, and this rationale for conversion to summary judgment dissipates.

GFF Corp, 130 F.3d at 1385.

of state law.  See Am. Mfr's. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

**A. McClellan**

1. Individual Capacity Claims

McClellan moves to dismiss the individual capacity claims against him (including the conspiracy claim) based on absolute prosecutorial immunity. (Doc. 16.)  "The Supreme Court has recognized the defense of absolute immunity from civil rights suits in several well-established contexts involving the judicial process." Snell v. Tunnell, 920 F.2d 673, 686 (10th Cir. 1990).  The Snell court explained:

> The rationale for [this defense] is to incorporate traditional common law immunities and to allow functionaries in the judicial system the latitude to perform their tasks absent the threat of retaliatory § 1983 litigation. Because the judicial system often resolves disputes that the parties cannot, the system portends conflict. Win or lose, a party may seek to litigate the constitutionality of circumstances which required him to endure a lawsuit or suffer defeat. Such suits by dissatisfied parties might target judges, prosecutors and witnesses. Though such suits might be satisfying personally for a plaintiff, they could jeopardize the judicial system's ability to function.

Id. at 686-87 (footnote and citations omitted).  "Typically, judges, prosecutors, and witnesses enjoy absolute immunity. But such immunity is not always available to them.  The Supreme Court has adopted a functional approach: that is, immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches." Stein v. Disciplinary Bd., 520 F.3d 1183, 1190 (10th Cir. 2008) (internal quotations and citations omitted).

Prosecutors are absolutely immune from civil liability for

-7-

damages for "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993). One such protected act is the decision to prosecute. Stein, 520 F.3d at 1193.

The entitlement to absolute immunity hinges on "the nature of the function performed" by the prosecutor. Kalina v. Fletcher, 522 U.S. 118, 127 (1997). Actions taken by a prosecutor in his role as an advocate fall within the ambit of absolute immunity, while actions taken in an investigative or administrative role are entitled only to qualified immunity. Buckley, 509 U.S. 259, 273-74 (1993). "In drawing this distinction, [courts] are guided by the following principle: The more distant a function is from the judicial process and the initiation and presentation of the state's case, the less likely it is that absolute immunity will attach." Scott v. Hern, 216 F.3d 897, 908 (10th Cir. 2000) (internal quotations and citations omitted).

Calvert argues that McClellan is not entitled to absolute immunity "because his act of providing the factual predicate for Calvert's arrest warrant was the act of a complaining witness, not a prosecutor." (Doc. 25 at 2.) Calvert contends that McClellan "personally attested to the facts underlying his request for Calvert's arrest warrant without attributing them to an outside source" and that therefore he was acting as witness, not a prosecutor, and is not entitled to absolute immunity. (Doc. 25 at 3-6.)

McClellan's application for the arrest warrant, however, does not state his beliefs. The motion reports the requirements of Winter's

-8-

order of probation, reports that the probation officer was notified of a violation of that order, and finally reports that during a home visit with that probation officer, Calvert confirmed that Winter had violated his probation "and [Calvert] did not notify law enforcement or the supervising officer of this violation." The application does not attest to McClellan's own beliefs. Rather, McClellan was preparing for the initiation of a judicial proceeding. McClellan was not investigating or acting as an administrator. McClellan was acting as a prosecutor during the behavior Calvert is basing her claims on, not as a witness, and absolute immunity applies to bar Calvert's claims against him.

In addition, there can be no conspiracy claim made against McClellan because of his absolute immunity. If a prosecutor enjoys absolute immunity from liability under § 1983, then a § 1983 conspiracy claim is subject to dismissal as well. See Hunt v. Bennett, 17 F.3d 1263, 1268 (10th Cir. 1994) (applying absolute immunity to a conspiracy claim under § 1983); see also Schamp v. Shelton, No. 06-4051-SAC, 2006 WL 2927523, at *6 (D. Kan. Oct. 12, 2006) (citing authorities).

McClellan's motion to dismiss Calvert's individual capacity claims is granted.

2. Official Capacity Claims[5]

McClellan moves to dismiss Calvert's official capacity claims

---

[5] McClellan also argues that, if Calvert is actually intending to bring a claim against Harper County, that claim should be dismissed as well, citing the Monell v. Dep't of Social Servs., 436 U.S. 658 (1978), line of cases. (Doc. 16 at 9-10.) Calvert does not respond to this argument, and does not appear to be pursuing a claim against Harper County.

-9-

against him because state officials are not "persons" under section 1983. (Doc. 16.) It has been established that county attorneys are state officials who are not a "person" who can be sued for money damages under § 1983. See Schroeder v. Kochanowski, 311 F. Supp. 2d 1241, 1254 (D. Kan. 2004) (citing authority). "[I]n any criminal case filed by a County Attorney, any actions taken in furtherance of the prosecution are taken on behalf of the State, not the County. Any actions by the county attorney are therefore attributable to the state, such that no liability can be imposed against the county for the county attorney's actions. That attribution of liability to the state means that the county attorney's acts in prosecuting crimes are cloaked with Eleventh Amendment immunity." Id.

Calvert agrees with McClellan's position. See Doc. 25 at 8 ("Calvert agrees a claim against McClellan in his official capacity for monetary damages would be incorrect."). Calvert then argues, however, that she requested both monetary relief and "such other relief to be deemed just and equitable" for each of her claims. Calvert characterizes this as a request for injunctive relief. (Doc. 25 at 8.)

"[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 n.10 (1989) (internal quotation omitted). However, Calvert's blanket and unspecified request for other "just and equitable" relief is insufficient to state a claim for prospective injunctive relief. When a complaint does not expressly request

prospective injunctive relief, the court should evaluate the complaint to determine whether the complaint gives "any indication that [the plaintiff] might be entitled to injunctive relief for ongoing federal constitutional violations by state officials." Calderon v. Kan. Dep't of Social & Rehab. Svcs., 181 F.3d 1180, 1183 (10th Cir. 1999); see also Frazier v. Simmons, 254 F.3d 1247, 1255 (10th Cir. 2001) (finding that because the nature of the harm alleged was amenable to injunctive relief, and because the plaintiff generally sought equitable relief, that Eleventh Amendment immunity was not applicable).

In this case, Calvert has alleged nothing other than a past, fully-complete harm. The harm alleged is that she was falsely arrested and detained. She alleges no continuing harm whatsoever. In fact, the criminal complaint against her has already been dismissed. Calvert alleges nothing in her complaint against McClellan that could be subject to prospective, injunctive relief: there is no allegation of a future threat and no mention of continuing conduct by McClellan. As a result, there was no notice given to McClellan that Calvert was requesting injunctive relief. Eleventh Amendment immunity applies and bars Calvert's official capacity claims against McClellan.

McClellan's motion to dismiss Calvert's official capacity claims is granted.

**B. Befort**

1. Individual Capacity Claims

Befort moves to dismiss the individual capacity claims against him based on absolute judicial immunity. (Doc. 12.) The Supreme Court of the United States has long held that judges are generally immune from suits for money damages. Mireles v. Waco, 502 U.S. 9,

-11-

9-10 (1991).  There are only two exceptions to this rule: (1) when the act is "not taken in [the judge's] judicial capacity;" or (2) when the act, "though judicial in nature, [is] taken in the complete absence of all jurisdiction."  Id. at 12.  Regarding the second exception, an act taken in excess of a court's jurisdiction is not to be confused with an act taken in the "complete absence of all jurisdiction."  As Bradley v. Fisher, 80 U.S. 335, 351-52 (1871), explained:

> Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend.

To illustrate this distinction, the Supreme Court has stated:

> [I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

Stump v. Sparkman, 435 U.S. 349, 357 n.7 (1978) (citing Bradley, 80 U.S. at 352).

Calvert does not dispute that Befort has the authority under Kansas law to issue arrest warrants.  Calvert argues that Befort acted outside his jurisdiction, because he "issued a warrant for a crime that did not exist."  (Doc. 23 at 4.)  However, it is clear that

-12-

Befort had jurisdiction over the subject matter at issue: Kansas statutes invested arrest warrant authority in him. A Kansas magistrate judge's powers are set forth in K.S.A. § 20-302b; which gives a magistrate judge authority over misdemeanor charges of violations of the laws of Kansas. Another section of the Kansas statutes defines a magistrate as simply a court officer with authority to issue arrest warrants. K.S.A. § 22-2202(14). General authority for judges to issue an arrest warrant arises under K.S.A. § 22-2303.

The authority to issue an arrest warrant is within Befort's jurisdiction. Even if all Calvert's allegations are true, the most Befort has done is exceed his jurisdiction, not act in the "clear absence" of his jurisdiction. See Stump, 435 U.S. at 357 n.7 ("[I]f a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune."). Befort's actions, as alleged by Calvert, are within the scope of absolute judicial immunity, and he cannot be liable in his individual capacity under § 1983 because of this immunity.

Befort's motion to dismiss Calvert's individual capacity claims is granted.[6]

2. Official Capacity Claims

Befort moves to dismiss the official capacity claims against him because as a state official, he is not a "person" under § 1983 and is therefore entitled to Eleventh Amendment immunity. (Doc. 12 at 8.)

---

[6] The absence of validity of Calvert's claims against Befort is highlighted by her prayer that if Befort is judicially immune, "the law should be modified or reversed to provide a system of redress for those injured by the indiscriminate acts of judges. . . ."

-13-

Calvert agrees, as above, that her claims for monetary damages against Befort are not appropriate, but again contends her official capacity claims are not subject to dismissal because she also seeks equitable relief from Befort for her claims.  (Doc. 23 at 5-6.)

As the court found above as to Calvert's alleged equitable claim against McClellan, Calvert has not made a claim for prospective injunctive relief against Befort, which could save her official capacity claims against him. Again, Calvert has alleged nothing other than a past, fully-complete harm.  The harm alleged is that Befort previously acted outside his authority, resulting in Calvert's previous arrest and imprisonment.  As stated above, the criminal complaint against Calvert has been dismissed, and there is nothing in Calvert's complaint that could be the subject of prospective, injunctive relief: there is no allegation of a future threat and no mention of continuing conduct by Befort.  As a result, there is no notice to Befort that Calvert sought injunctive relief.  Eleventh Amendment immunity applies and bars Calvert's official capacity claims against Befort.

Befort's motion to dismiss Calvert's official capacity claims is granted.

**C.  Freeman**

1.  Individual Capacity Claims

Freeman moves for dismissal of the individual capacity claims made against him based on absolute immunity (piggybacked from Befort's absolute judicial immunity), and in the alternative, based on qualified immunity, arguing that the arrest warrant was facially valid.  (Doc. 18.)  Calvert responds that Freeman is not entitled to

-14-

immunity because he executed the warrant knowing it was without probable cause. (Doc. 27.)

"Immunity which derives from judicial immunity may extend to persons other than a judge where performance of judicial acts or activity as an official aide of the judge is involved." Henriksen v. Bentley, 644 F.2d 852, 855-56 (10th Cir. 1981). However, "[t]he presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 432 n. 4 (1993) (internal quotations omitted) (rejecting absolute immunity for court reporters).

Absolute immunity is not available simply because one's work is "functionally part and parcel of the judicial process." Id. at 432. Yet, even a court clerk may be entitled to absolute immunity when the clerk is "acting under the command of a court decree or explicit instructions from a judge." Henriksen, 644 F.2d at 855. "Immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches. The extent of government officials' immunity depends on the likely effect their exposure to liability will have on the operation of effective government in a particular context, balanced against the potential for a deprivation of individual rights in that context." Valdez v. City & County of Denver, 878 F.2d 1285, 1287 (10th Cir. 1985) (internal quotation omitted).

"Enforcing a court order or judgment is intrinsically associated with a judicial proceeding. . . Absolute immunity for officials assigned to carry out a judge's orders is necessary to insure that

-15-

such officials can perform their function without the need to secure permanent legal counsel. A lesser degree of immunity could impair the judicial process." <u>Valdez</u>, 878 F.2d at 1288. "To force officials performing ministerial acts intimately related to the judicial process to answer in court every time a litigant believes the judge acted improperly is unacceptable. . . Tension between trial judges and those officials responsible for enforcing their orders inevitably would result were there not absolute immunity for both." <u>Id.</u> at 1289.

Absolute immunity applies to Calvert's claims against Freeman. Calvert's most severe allegations against Freeman are that he executed a warrant issued by Befort, despite not wanting to do so. Freeman had no discretion whether to execute the warrant. There is no allegation that the warrant did not clearly identify Calvert or the crime with which she was charged. Calvert alleges that Freeman stated he had never arrested anyone for the crime before, and that he did not handcuff her, but this does not change the fact that Freeman was simply carrying out the judge's order. <u>See</u> <u>Turney v. O'Toole</u>, 898 F.2d 1470, 1473 (10th Cir. 1990) ("Even assuming that the order was infirm as a matter of state law, it was facially valid. 'Facially valid' does not mean 'lawful.' An erroneous order can be valid.").

Therefore, immunity applies to Calvert's claims against Freeman for Freeman's execution of the facially valid arrest warrant. In an attempt to challenge this clear application of the law, however, Calvert makes two counter arguments. Calvert first argues that Freeman's argument relies on facts outside the record, citing Freeman's motion to dismiss wherein he states that the arrest warrant was facially valid, that his involvement was limited, and regarding

-16-

the validity of the warrant. These statements, however, are not assertions of fact, but rather are Freeman's interpretations of the facts alleged by Calvert. Calvert attempts to create a factual issue concerning Freeman's knowledge at the time of Calvert's arrest. However, regardless of whether Freeman had ever seen anyone arrested for the crime charged, or whether Freeman placed Calvert in handcuffs when he arrested her, or whether Freeman thought the arrest warrant was an imprudent use of resources, Freeman was entitled to rely on and enforce the judicial order he was given.

Calvert next argues that Freeman is not entitled to absolute immunity because the warrant was not supported by probable cause. However, this is not a requirement for the law applicable to absolute immunity for an officer relying on a facially valid arrest warrant. The case Calvert relies on, <u>Juriss v. McGowan</u>, 957 F.2d 345, 350-51 (7th Cir. 1992), is not applicable because, in that case, the plaintiff had alleged that the officer executing the arrest warrant <u>knew</u> the arrest warrant was not supported by probable cause because the same officer had lied to a grand jury in order to support the application for the arrest warrant. Here, Calvert alleges no such thing against Freeman. Calvert simply alleges that Freeman had "never seen anyone arrested for a violation of which Plaintiff was charged," not that he knew the arrest warrant was not supported by probable cause. Such a claim cannot even be inferred from Calvert's complaint.

In addition, the Tenth Circuit has made it clear that when the judge issuing an order is entitled to absolute immunity for issuing that order (<u>i.e.</u>, the judge is not acting "in the clear absence of all jurisdiction"), then state officers executing the order are also

immune.  Turney, 898 F.2d at 1473-74; see also Gregory v. United States, 942 F.2d 1498, 1500 (10th Cir. 1991) (citing Turney as support for "granting absolute immunity to those executing facially valid judicial orders); Snell v. Tunnell, 920 F.2d 673, 674 n.19 (10th Cir. 1990) (citing Turney as support for the proposition that absolute quasi-judicial immunity applies only to execution of judicial orders, and not applications of legal judgment); Martin v. Bd. of County Commmrs., 909 F.2d 402, 405 (10th Cir. 1990) (holding that absolute immunity protects defendants from damage claims resulting from court-ordered conduct, but not claims resulting from the manner of execution of the court order).

Freeman's motion to dismiss Calvert's individual capacity claims is granted.

2. Official Capacity Claims

Freeman moves for dismissal of the official capacity claims against him by arguing that Calvert's claims are actually made against Harper County and Calvert has alleged no custom/policy of Harper County as is necessary for such claims. (Doc. 18.)  Calvert concedes that her official capacity claims for money damages against Freeman are "incorrect."  However, Calvert continues to press the theory that she can pursue a claim for prospective injunctive relief under Will v. Michigan Dep't State Police, 491 U.S. 58, 71 n.10 (1989) (noting that official capacity claims for prospective injunctive relief are not claims against the state subject to Eleventh Amendment immunity). However, as analyzed above, Calvert's complaint makes no prospective injunctive claim against Freeman, and has alleged no threat of continuing harm by Freeman.

-18-

Freeman's motion to dismiss Calvert's official capacity claims is granted.

## IV. CONCLUSION

Befort's motion to dismiss (Doc. 11), McClellan's motion to dismiss (Doc. 15), and Freeman's motion to dismiss (Doc. 17) are GRANTED, for the reasons stated more fully herein.

This matter is stayed, pending this court's resolution of Ediger's motion for judgment on the pleadings.

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed 3 double-spaced pages and shall strictly comply with the standards enunciated by this court in <u>Comeau v. Rupp</u>, 810 F. Supp. 1172, 1174 (1992). The response to any motion for reconsideration shall not exceed 3 double-spaced pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this __8th__ day of July, 2008, at Wichita, Kansas.

                                    s/Monti Belot
                                    Monti L. Belot
                                    UNITED STATES DISTRICT JUDGE