# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF KANSAS

TAMMY CALVERT,                    )
                                  )
             Plaintiff,           )    **CIVIL ACTION**
                                  )
v.                                )    No. 08-1050-MLB
                                  )
JENNIFER EDIGER,                  )
                                  )
             Defendant.           )
_____)

## MEMORANDUM AND ORDER

This case comes before the court on defendant's motion for summary judgment. (Doc. 107). The motion has been fully briefed and is ripe for decision. (Docs. 108, 111, 114). Defendant's motion is granted for the reasons herein.

## I.  Facts[1]

Plaintiff Tammy Calvert resides in Attica, Kansas, with her son Christopher Winter. During 2007, Christopher was a juvenile and on probation for burglary and theft offenses. The conditions of Christopher's probation required him to attend school regularly and not be away from home without parental supervision. The order of probation also required plaintiff and Fred Winter, Christopher's father, to report any violations of Christopher's probation to his probation officer, defendant Jennifer Ediger. Plaintiff was aware of her obligations.

In the early morning of April 27 or 28, 2007, Christopher and

---

[1] All facts set forth are either uncontroverted, or, if controverted, taken in the light most favorable, along with all favorable inferences, to plaintiff. See Adler v. Wal-Mart Stores, Inc., 144 F.3d at 670 (10th Cir. 1998).

a friend took plaintiff's car keys and left the house in plaintiff's vehicle. Christopher also took a debit card belonging to his sister's boyfriend. Christopher and his friend drove plaintiff's car around for a couple of hours and purchased gas with the debit card. In the morning, plaintiff noticed that her car had mud on the flaps and a full tank of gas. Plaintiff questioned Christopher who denied taking the car. Plaintiff did not report the activity to defendant because she did not have any "proof" that Christopher took her car.

On May 7, Christopher refused to go to school because he did not have a clean shirt. Fred Winter called defendant to report Christopher's absence. Winter also visited plaintiff at her place of employment to tell her what had occurred. Bud Moore, the principal at Christopher's school, also called defendant to report the absence. Moore additionally told defendant that Christopher had gone joyriding and had stolen a credit card. Later that morning, at approximately 11 a.m., plaintiff testified that Moore called her at work to inform her that he overheard Christopher talking about stealing her car and the credit card.[2] Plaintiff did not call defendant to report Christopher's actions but instead went home over her lunch hour to discuss the issue with Christopher. Plaintiff did not call defendant because she cannot call long distance from work and she did not have her cell phone with her.

Plaintiff left her job at 11:30 a.m. to go home for lunch. When she arrived, both Christopher and Winter were at home. Plaintiff

---

[2] Moore testified that he visited plaintiff at work to discuss Christopher's absence. Moore further testified that plaintiff was the one who told him about Christopher's joyriding.

immediately questioned Christopher about the joyriding and he admitted his involvement. About five minutes later, defendant arrived. Defendant and plaintiff began discussing the incident and defendant accused plaintiff of not complying with the probation order. Plaintiff told defendant that she did not know of the incident until earlier that morning. Defendant told Christopher that he would be going to go to jail. Defendant also told plaintiff that she would have her put in jail unless she filed a charges against Christopher for stealing the car.

Defendant left plaintiff's home and later prepared an arrest and detain order to have Christopher taken into custody for the probation violation. Defendant also prepared and signed an affidavit to revoke Christopher's probation. The affidavit stated that "[t]he defendant's mother failed to report that on or about April 28th, 2007, the defendant stole her vehicle and a credit card and left his residence, to the supervising officer." (Doc. 108, exh. 8). Defendant also prepared a two-paragraph letter to County Attorney Laurel McClellan on May 7 which stated:

> Christopher Winter was sentenced by Judge Befort on April 24, 2007. At this time the court ordered that the parents/grandparents were to report any violation of probation immediately to the supervising officer.
>
> On May 7, 2007 the supervising officer was notified by Bud Moore with Sharon School that the other weekend Christopher had <u>taken</u> his mother's car and a credit card and went out. A home visit was conducted and Tammy Calvert, mother, confirmed that Christopher had <u>taken</u> her vehicle and a credit card, in which he made a $20.00 charge, on or about April 28, 2007. Tammy did not notify law enforcement or the supervising officer of this violation.

(Doc. 108, exh. 9)(emphasis added).

On May 8, the County Attorney McClellan filed a criminal contempt case against plaintiff and requested that Judge Befort issue an arrest warrant. No affidavit was filed in support of the arrest warrant. McClellan testified that he instructed his secretary to open a civil contempt case against plaintiff in Christopher's juvenile proceeding which would have required plaintiff to appear and show cause. McClellan further testified that his secretary instead opened a criminal case and he mistakenly signed the papers. McClellan's secretary, Marilyn Downing, testified that she knew the difference between a civil contempt action and opening a criminal case and that she would not have opened a criminal case against an individual unless she was specifically instructed to.

A warrant was issued and plaintiff was arrested on May 9. Plaintiff was taken to the Sheriff's Department in Anthony, Kansas, and was released on bond less than one hour later. On August 14, the criminal action was dismissed after Judge Solomon found that there was no statutory authority to arrest plaintiff. Judge Solomon further ordered that Harper County was required to pay plaintiff's expenses to expunge her record. McClellan then filed a motion for order to show cause in Christopher's juvenile case and a hearing was held on August 24. In February 2008, McClellan dismissed the contempt proceeding.

Plaintiff filed this suit on February 14, 2008. Initially, plaintiff brought suit against Judge Befort, McClellan and Mike Freeman, the deputy who arrested plaintiff. This court dismissed those defendants on the basis of judicial and prosecutorial immunity on July 8, 2008. (Doc. 35). Defendant Ediger now moves for summary

-4-

judgment on the basis of qualified immunity.

**II.    Summary Judgment Standards**

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here.  Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists so that a rational trier of fact could resolve the issue either way and an issue is "material" if under the substantive law it is essential to the proper disposition of the claim.  <u>Adamson v. Multi Community Diversified Svcs., Inc.</u>, 514 F.3d 1136, 1145 (10th Cir. 2008).  When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).  If so, the court cannot grant summary judgment.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

**III.   Analysis**

When law enforcement officers abuse their power, suits against them allow those wronged an effective method of redress.  <u>See</u> <u>Anderson v. Creighton</u>, 483 U.S. 635, 638 (1987) (citing <u>Harlowe v. Fitzgerald</u>, 457 U.S. 800, 814 (1982)).  Pursuant to 42 U.S.C. section 1983, any person who "under color of . . . [law] . . . subjects, or causes to be subjected, . . . any [person] . . . to the deprivation of any

rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." Section 1983 was enacted to provide protections to those persons wronged by the misuse of power. While the statute itself creates no substantive civil rights, it does provide an avenue through which civil rights can be redeemed. See Wilson v. Meeks, 52 F.3d 1547, 1552 (10th Cir. 1995). To state a claim for relief in a section 1983 action, plaintiff must establish that he was (1) deprived of a right secured by the Constitution or laws of the United States and (2) that the alleged deprivation was committed under color of state law. See Am. Mfr's. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999). There is no dispute that defendant was acting under color of state law.

### A. Qualified Immunity

While section 1983 permits the possible vindication of a plaintiff's rights, non-meritorious suits exact a high cost upon society and law enforcement personnel. See Anderson, 483 U.S. at 638. Indeed, the Supreme Court and the Tenth Circuit have recognized these suits may unduly interfere with the discharge of discretionary duties due to the constant fear civil litigation and potential monetary damages. See Harlowe v. Fitzgerald, 457 U.S. 800, 814 (1982); Wilson v. Stock, 52 F.3d 1547, 1552 (10th Cir. 1995). "[T]o submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." Horstkoetter v. Department of Public Safety, 159 F.3d 1265, 1277 (10th Cir. 1998) (internal quotations omitted) (citing Gregoire v. Biddle, 177 F.2d 579, 581 (2d

Cir. 1949)).

In order to balance these competing interests, government officials performing discretionary duties are afforded qualified immunity shielding them from civil damages liability. Pearson v. Callahan, 129 S. Ct. 808, 815, 172 L. Ed.2d 565 (2009). Qualified immunity protects these officials unless their conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." Id.; Baptiste v. J.C. Penney Co., Inc., 147 F.3d 1252, 1255 (10th Cir. 1998). The defense not only provides immunity from monetary liability, but perhaps more importantly, from suit as well.[3] See Horstkoetter, 159 F.3d at 1277.

When a defendant claims qualified immunity, the plaintiff bears the burden of (1) coming forward with sufficient facts to show that the defendant's actions violated a constitutional right and (2) demonstrating the right allegedly violated was "clearly established" at the time the conduct occurred. Pearson, 129 S. Ct. at 815-6. As noted in Pearson, courts are no longer required to follow the two-step sequence mandated by Saucier v. Katz, 533 U.S. 194 (2001). Id. at 818. "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. The court will first address the clearly established prong.

---

[3] One of the purposes of qualified immunity is to "protect public officials from the 'broad-ranging discovery' that can be peculiarly disruptive of effective government." Anderson, 483 U.S. at 646 n.6.

### 1. Violation of Constitutional Right

To determine whether plaintiff has sufficiently shown the violation of a constitutional right at all, this court must determine whether plaintiff's allegations, if true, state a claim for a violation of a constitutional right. See Romero, 45 F.3d at 1475 (relying in part upon Siegert v. Gilley, 500 U.S. 226, 231-32 (1991)). Determining whether a plaintiff has stated a claim for a constitutional violation is purely a legal question.[4]  See id. Despite the inevitable factual issues that become intertwined in the characterization of a plaintiff's precise constitutional claims, this court cannot avoid the legal issue by simply framing it as a factual question. See Archer v. Sanchez, 933 F.2d 1526, 1530 n.7 (10th Cir. 1991).

Plaintiff alleges that her rights were violated by her arrest and seizure that occurred on May 9, 2007. Both parties agree that the court should analyze plaintiff's claim as one for malicious prosecution. In doing so, the Tenth Circuit requires that the court look to Kansas law for the elements of malicious prosecution. Taylor v. Meacham, 82 F.3d 1556, 1561 (10th Cir. 1996). In Kansas, a plaintiff bringing a malicious prosecution claim must prove: "(1) the defendant initiated, continued, or procured the proceeding of which the complaint is made; (2) the defendant in so doing acted without probable cause; (3) the defendant acted with malice; (4) the proceedings terminated in favor of plaintiff; and (5) plaintiff

---

[4] Similarly, whether the right was clearly established at the time the incident occurred is also a legal question. See Romero, 45 F.3d at 1475 (relying in part upon Siegert v. Gilley, 500 U.S. 226, 231-32 (1991)).

sustained damages." Price v. Cochran, No. 02-3213, 2003 WL 21054706, 7 (10th Cir. May 12, 2003)(citing Lindenman v. Umscheid, 255 Kan. 610, 875 P.2d 964, 974 (Kan. 1994)).

Defendant initially argues that she is not the cause of the criminal complaint and warrant that was issued in the underlying criminal case. Plaintiff responds that defendant's actions were the sole reason that the charges were initiated and therefore the first element is met. Plaintiff cites Pierce v. Gilchrist, 359 F.3d 1279 (10th Cir. 2004), to support her position. In Pierce, the plaintiff spent fifteen years in prison for a rape he did not commit. The defendant in Pierce was a forensic chemist who testified falsely that hairs found at the scene of the crime could have come from the plaintiff. In finding that the defendant could be liable for malicious prosecution, the court reasoned as follows:

> This Court has previously held that officers who conceal and misrepresent material facts to the district attorney are not insulated from a § 1983 claim for malicious prosecution simply because the prosecutor, grand jury, trial court, and appellate court all act independently to facilitate erroneous convictions. Robinson v. Maruffi, 895 F.2d 649, 655-56 (10th Cir. 1990). Robinson, in turn, relied on the Seventh Circuit's decision in Jones v. City of Chicago, 856 F.2d 985 (7th Cir. 1988), which, in light of the issues presented here, bears recounting.
>
> Jones was a § 1983 action for malicious prosecution against several members of the Chicago police force who conspired to frame an innocent George Jones for murder and rape. Id. at 988-92. Among the numerous defendants was a lab technician who concealed exculpatory blood, semen, and hair evidence from the relevant file. Id. at 991. The jury returned a verdict of more than $800,000 against the police defendants. Thereafter, the defendants challenged the verdict on the basis that the intervening acts by the state prosecutor to charge and prosecute Jones shielded them from liability for malicious prosecution. Id. Rejecting this contention, the Seventh Circuit, per Judge Posner, held:

> [A] prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial-none of these decisions will shield a police officer <u>who deliberately supplied misleading information that influenced the decision</u>....
>
> If police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors, or magistrates to confine or prosecute him. They cannot hide behind the officials whom they have defrauded.
>
> <u>Id.</u> at 994 (emphasis in original) (cited with approval in <u>Robinson</u>, 895 F.2d at 656).
>
> Accordingly, Ms. Gilchrist cannot "hide behind" the fact that she neither initiated nor filed the charges against Mr. Pierce. The actions of a police forensic analyst who prevaricates and distorts evidence to convince the prosecuting authorities to press charges is no less reprehensible than an officer who, through false statements, prevails upon a magistrate to issue a warrant. In each case the government official maliciously abuses a position of trust to induce the criminal justice system to confine and then to prosecute an innocent defendant. We view both types of conduct as equally repugnant to the Constitution.

<u>Pierce</u>, 359 F.3d at 1292-93 (emphasis added).

Plaintiff urges the court to adopt the reasoning in <u>Pierce</u> and find that defendant's conduct was the cause of the criminal action. The facts in this case, however, are remarkably different from those in <u>Pierce</u>. The information defendant provided to McClellan and to the court on the motion to revoke probation was not false. Defendant correctly stated that Christopher had taken[5] plaintiff's car and a

---

[5] Plaintiff attempts to argue that this is incorrect because Christopher went "joyriding" and did not steal his mother's car, but this argument does not raise a disputed issue of material fact. The record clearly demonstrates that plaintiff did not give Christopher permission to take her car. Notably, the letter to McClellan merely stated that the car was "taken" and not stolen. Defendant used the word "stolen" when she prepared an affidavit seeking a revocation of Christopher's probation. It was the letter, not the affidavit, which McClellan relied upon to file the contempt case which precipitated

-10-

credit card in the middle of the night.  Defendant also correctly reported that plaintiff had failed to notify her or law enforcement of the violation.  While there is some dispute as to when and/or how plaintiff learned of the incident, there is no dispute that she knew of the incident prior to her encounter with defendant on May 7.  Furthermore, the testimony of McClellan is that the criminal complaint was mistakenly filed.  McClellan did not testify that he intended to file criminal charges based on the information provided by defendant.[6]

The Tenth Circuit's position on causation requires that the actions of an officer be false or misleading.  See Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006); Thomas v. City of Snyder, Okl., No. 95-6252, 1996 WL 662453, 4 (10th Cir. Nov. 15, 1996); Robinson v. Maruffi, 895 F.2d 649, 655 (10th Cir. 1990).  In this case, defendant did not mislead McClellan in any way.  Therefore, plaintiff has not established that defendant caused the criminal charges to be initiated against her.  Thomas, 1996 WL 662453, 4 (the defendant was entitled to qualified immunity because "the record [did] not present a triable issue of fact as to whether [defendant] purposely provided false or misleading information to the prosecutor.")

Accordingly, the court finds that plaintiff has failed to establish that defendant violated her constitutional rights.

---

plaintiff's arrest.

[6] The parties point to a dispute regarding what McClellan told his secretary to do vis-a-vis the secretary's recollection of what she was told.  Plaintiff suggests that McClellan accepted responsibility for his mistake only because he enjoys absolute immunity for liability in this case; in other words, that McClellan lied under oath regarding his instructions to his secretary.  But this dispute is not material because there is no evidence that defendant provided false information to McClellan.

-11-

### 2. Clearly Established Constitutional Right

Even if plaintiff had established a constitutional violation, the court would grant qualified immunity to defendant under the clearly established prong. To find that a right was clearly established, the court must determine that defendant would have understood that her conduct violated a constitutional right that was clearly established at the time the alleged acts took place. See Cruz v. City of Laramie, 239 F.3d 1183, 1187 (10th Cir. 2001); Watson v. University of Utah Med. Ctr., 75 F.3d 569, 577 (10th Cir. 1996).

In this case, defendant followed the routine process of filing a revocation of probation and informing the prosecutor. While defendant's actions and words with plaintiff may have shown her desire to have plaintiff in jail for violating the probation order, plaintiff has failed to demonstrate that defendant did more than state the facts as they were on May 7. Defendant knew that the regular process would lead to a show cause hearing in which the judge would decide whether plaintiff violated the order and then enforce a consequence. There is no evidence to support that a reasonable probation officer would believe that filing a report listing a probation violation would result in a criminal action and arrest. Clearly, as plaintiff has pointed out, there is no statutory authority for such action and there is no evidence that defendant had anything to do with the filing of the criminal action. The evidence before the court was that the action was filed by mistake or inadvertence.

**IV. Conclusion**

Defendant's motion for summary judgment is granted. (Doc. 107). The clerk is ordered to enter judgment in favor of defendant.

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. <u>Comeau v. Rupp</u>, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed five pages and shall strictly comply with the standards enunciated by this court in <u>Comeau v. Rupp</u>. The response to any motion for reconsideration shall not exceed five pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this <u>  3rd  </u> day of March 2010, at Wichita, Kansas.

<u>s/ Monti Belot                </u>
Monti L. Belot
UNITED STATES DISTRICT JUDGE